UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Deming Song

_____

Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been assigned)

-against-

Xavier Becerra, Secretary, U.S. Dep't Health & Health Human Services Agency

Do you want a jury trial?

☐ Yes    ☐ No

_____

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

## EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 3/24/17

Page 2

## I.    PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Deming | | Song |
|---|---|---|
| First Name | Middle Initial | Last Name |

| 64-10 181st |
|---|
| Street Address |

| Fresh Meadows | NY | 11365 |
|---|---|---|
| County, City | State | Zip Code |

| 646-541-5270 | demingsong@aol.com |
|---|---|
| Telephone Number | Email Address (if available) |

### B.   Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

| Xavier Becerra, Secretary U.S Dep't Health & Human Services |
|---|
| Name |

| |
|---|
| Address where defendant may be served |

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| |
|---|
| Name |

| |
|---|
| Address where defendant may be served |

| County, City | State | Zip Code |
|---|---|---|

Page 2

Defendant 3:

_____

Name

_____

Address where defendant may be served

_____

County, City                                    State                      Zip Code

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

Federal Drug Administration

Name

158-15 Liberty Ave

Address

Jamaica                                          NY                          11433

County, City                                    State                      Zip Code

## III.    CAUSE OF ACTION

### A. Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☒  race:          Asian

☐  color:         _____

☐  religion:      _____

☒  sex:           Male

☒  national origin:  Chinese

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: **Asian** _____

☒ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: **1947** _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B. Other Claims

In addition to my federal claims listed above, I assert claims under:

☐ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☐ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

Page 4

## IV.    STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☐  did not hire me

☐  terminated my employment

☐  did not promote me

☐  did not accommodate my disability

☒  provided me with terms and conditions of employment different from those of similar employees

☐  retaliated against me

☒  harassed me or created a hostile work environment

☒  other (specify):    Constructive discharge after placed on forced leave

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

See attached— Statement of Facts, "Background" in EEOC decision.

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

Page 5

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☒   Yes (Please attach a copy of the charge to this complaint.)

     When did you file your charge? _____

☐   No

Have you received a Notice of Right to Sue from the EEOC?

☒   Yes (Please attach a copy of the Notice of Right to Sue.)

     What is the date on the Notice?   June 1, 2023_____

     When did you receive the Notice?   June 3, 2023_____

☐   No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

☐   direct the defendant to hire me

☐   direct the defendant to re-employ me

☐   direct the defendant to promote me

☐   direct the defendant to reasonably accommodate my religion

☐   direct the defendant to reasonably accommodate my disability

☒   direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)
Lost wages due to constructive discharge.

_____

_____

_____

_____

## VII.  PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | | Plaintiff's Signature |
|---|---|---|
| Deming | | Song |
| First Name | Middle Initial | Last Name |
| 64-10 181st | | |
| Street Address | | |
| Fresh Meadow | NY | 11365 |
| County, City | State | Zip Code |
| 646-541-5270 | | demingsong@aol.com |
| Telephone Number | | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes   ☐ No

    If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

## Complaint Facts

1. From 2001 until his forced retirement in 2019, Plaintiff (Asian, Chinese, DOB Nov. 1947) was a GS-12 Chemist employed by HHS in the Food Drug Administration ("FDAs") Northeast Food and Feed Laboratory ("NFFL") located in New York, New York. Plaintiff joined NFFL's Laboratory H ("Lab H") in 2017; the chemists in this lab are responsible for analyzing human food and animal feed samples for traces of metals. In February 2018, Ms. Stutts (Caucasian, American, DOB Aug.1988), GS-13, became Plaintiff's first-line supervisor, and she continued to act in this position until Plaintiffs forced retirement in November 2019.

## Ms. Stutts Disrupted Plaintiff's Proficiency Tests and Improperly Assessed Plaintiff's Performance Under a Subsequent PIP.

2. Plaintiff performed satisfactorily in his role at Lab H and in prior roles.  Previous samples were completed successfully when Selema was the Plaintiff's supervisor in early 2017. Selema sent an email praising Plaintiff's remarkable job.

3. Leading up to the PIP, Plaintiff believed Ms. Stutts disrupted his proficiency tests ("PT").

4. Ms. Stutts stopped Plaintiff in the middle of a PT (March 22, 2018), sabotaging his work product. She claimed that it was to save Argon (to let the 8800 machine run the samples instead of the 7700 machine that Plaintiff was using). Ms. Stutts' interruption caused Plaintiff to fail the PT, and Ms. Stutts did not let Plaintiff count his hours.

5. On June 26, 2018, Plaintiff found a problem. The tune report could not maintain the sensitivity $Li\ 7 > 3000$ while keeping the background noise below 10%. He asked Ms. Stutts about this problem. She told Plaintiff that it was okay. However, when he submitted the PT package on July 6, 2018, her tone changed because the tune report failed due to her own improper instructions.

6. On December 12, 2018, Plaintiff submitted another PT. Ms. Stutts refused to allow him to submit a new version of his file, which had a few changes. Plaintiff saw that the results were great. However, Ms. Stutts refused to change the file to the new version which resulted in a few numbers not matching.

7. Ms. Stutts issued Plaintiff a performance management appraisal program ("PMAP") rating of 1.8/5 overall for 2018, with a score of 1 (unacceptable performance) for technical competency/ knowledge. Plaintiff performed above satisfactorily in his role

throughout his almost twenty-year career at the FDA. He never received poor performance marks in the prior 20 years at the FDA.

8. From February 15, 2019 through June 15, 2019, Plaintiff was placed on a Performance Improvement Plan ("PIP") for work performance which exceeded the non-Asian older male employees who were not placed on a PIP. To pass the PIP, Plaintiff needed to both (1) "Independently complete an EAM 4.7 proficiency test sample and submit a properly formatted and fully completed analytical package..." and (2) "perform analysis on regulatory samples, which is the major job duty as outlined in your position description."

9. On April 25, 2019, Plaintiff satisfied objective 1 of the PIP. With respect to objective 2, Ms. Stutts assigned Plaintiff three regulatory samples to complete during the PIP.

10. Ms. Stutts determined that Plaintiff's work product for the three assigned regulatory samples did not meet FDA standards and thus was unacceptable.

11. Ms. Stutts credited Plaintiff with one (1) hour per sample for the work he contributed to the correct sample analysis. Plaintiff alleges that he worked 40 hours when Ms. Stutts accused him of inflating the facts. Song said that he worked on sample 1111279 for 40 hours, which was the minimum time for analysis on this sample. Ms. Stutts did not properly communicate the expectations and requirements for how to pass the PIP.

12. Ms. Stutts treated him unfairly in comparison to the non-Asian older male employees. For example, a PT analysis should be performed independently, not in a group. Another colleague did her PT with Ms. Stutts' help. Ms. Stutts helped the colleague set the paraments of the instrument. This was not allowed during a PT test and Plaintiff was never afforded assistance.

13. Plaintiff was careful in his work and did not make mistakes more frequently than his colleagues, however, Ms. Stutts reported that during the PIP period Plaintiff exhibited poor laboratory safety and awareness of contamination risks. There may be occasional mistakes in any workplace, but in this case, Plaintiff's actions are insufficient to warrant a complete failure of the PIP. Ms. Stutts did not admonish other non-Asian older male employees who made occasional mistakes in the way she ridiculed Mr. Song.

**Plaintiff Was Denied the Opportunity to Attend a Conference and Was Given Inappropriate Work Assignments.**

14. Plaintiff received numerous invitations to conferences. On June 6, 2019, Plaintiff requested to attend the AOAC scientific conference in Denver, Colorado from September 8-12, 2019. Ms. Stutts denied this request during an in-person conversation. She noted that he needed to focus on passing his PIP. It is not reasonable to deny Plaintiff the ability to attend a conference solely because he was on a temporary PIP. His prior performance and years of experience warranted granting his request.

15. Plaintiff was also never able to attend the national American Chemical Society Conference in Pittsburgh despite having 20 years of work experience with the federal government. Plaintiff requested to attend a Detroit, Michigan training, but the request was never granted.

16. Ms. Stutts deprived Plaintiff of a substantial number of training opportunities. For instance, he received a nomination for an Advanced Metal course, LB 404. However, Ms. Stutts wrongfully removed his name and blamed ORS for removing it.

17. In addition, Stutts showed her animus toward my age and nationality by deliberately directing me to perform the heavy work in the lab, clean lab glass bottles in large carts and then refused to credit me with any work hours.

**Ms. Stutts Required Plaintiff to Use the Worst ICP-MS Machine to Complete his PT, Resulting in Failure of Plaintiff's Second PT.**

18. In or around September 2018, Plaintiff requested to use a 7900 series ICP-MS to complete his next PT, noting that the 7700 series was malfunctioning because his July 2, 2018 tuning report failed to meet established parameters. Ms. Stutts rejected Plaintiff's request to use the 7900 machine. She claims that Song failed to tune the machine properly, however, Song had no issue tuning the machine and had successfully tuned the machine in the past.

19. Plaintiff worked hard to tune the 7700 machine. The 7700 often malfunctioned in the middle of a run, causing Plaintiff to ruin his batch and testing. Ms. Stutts had previously expressed that the 7700 machine is not stable, but she nonetheless forced Plaintiff to use 7700 for his PT and evaluated his results by the strictest metrics.

20. When Plaintiff raised the issues regarding the 7700 machine with the branch director William Kenneth, he allowed Plaintiff to use the 7900 machine for his PT.

## Ms. Stutts Placed Plaintiff on Administrative Leave on November 4, 2019.

21. On November 4, 2019, Ms. Stutts issued a proposal to remove Plaintiff from federal service for unacceptable performance. She placed him on paid administrative leave until a decision on his removal was reached. Ms. Stutts stated that she believed Plaintiff constituted a threat to the safety of government employees. Plaintiff was respectful to his colleagues and cooperative with management. Plaintiff explained that he never spoke harshly at anyone except once to Ms. Stutts, who provoked him. Any reasonable person would have reacted similarly, and it was a direct result of Ms. Stutts's actions. During the couple of times when Ms. Stutts talked to him in the meeting room, she often closed the two doors of the meeting room, which blocked the through way of Lab B. Plaintiff had to ask her to open the door. Plaintiff behaved appropriately and his actions did not warrant administrative leave.

22. In addition, Ms. Stutts did not follow FDA rules and procedures for forced leave. Upon information and belief, Stutts never obtained proper approval prior to sending plaintiff home. She demanded that Plaintiff leave the building at once and could not take any personal belongings, including his I.D., keys, an envelope with personal funds, etc.

23. After continuous harassment by Ms. Stutts culminating in a forced leave, Plaintiff had no choice but to finalize his retirement.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Deming Song a/k/a
Stephen R.,[1]
Complainant,

v.

Xavier Becerra,
Secretary,
Department of Health and Human Services
(Food and Drug Administration),
Agency.

Appeal No. 2021004763

Hearing No. 520-2020-00386X

Agency No. HHS-FDAORANE-101-19

DECISION

Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's August 5, 2021, final order concerning his equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq., and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq. For the following reasons, the Commission AFFIRMS the Agency's final order.

BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Chemist, GS-12, at the Agency's Northeast Food and Feed Laboratory (NFFL) in New York, New York.

On July 9, 2019, Complainant initiated EEO Counselor contact. On August 16, 2019, Complainant filed an EEO complaint alleging that the Agency subjected him to a hostile work

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2021004763

environment and discriminated against him on the bases of race (Asian), national origin (Chinese), color (yellow), age (71), and in reprisal for protected EEO activity when[2]:

1.  on June 27, 2019, Complainant input 40 hours of time spent to complete three Samples in the Facts software database that tracks time, performance, and reliability. On June 27, 2019, Complainant's supervisor (Supervisor) required that he reduce the time he input in Facts from 40 hours to one-to-three hours for each sample. Complainant notes that Supervisor allowed other employees to input three-to-five hours for each sample of the same work.

2.  on June 19, 2019, Supervisor emailed Complainant that he failed to do his samples and informed him that he was not performing successfully on his Performance Plan that was put in place in April 2019, although he had passed Proficiency Test (PT) on April 26, 2019, and successfully completed many regulatory samples.

3.  in June 2019, Supervisor denied Complainant's request to attend a September 2019 Scientific Conference in Detroit, Michigan, for which an email had been sent out to all employees asking if they would like to attend. Supervisor failed to give Complainant a reason why his request to participate was denied.

4.  On an ongoing basis, Supervisor deprived Complainant of the opportunity to attend training courses, such as the Advanced Elemental Analysis, by removing his name from nomination.

5.  On May 30, 2018, Supervisor issued Complainant a Reprimand Letter regarding the paper/research project he submitted, "Test of Mercury and Lead in Cosmetic products by Inductively Coupled Plasma-Mass Spectrometer" (ICP-MS); and

6.  from March 2018 to June 2019, Supervisor assigned the worst ICP-MS machine to Complainant for his PT, which resulted in failure of his second PT. Supervisor denied Complainant's previous approval to use a different machine to do the PT. Supervisor also frequently changed the criteria of the PT and favored and assisted some other employees for data analysis while focusing on Complainant's faults.

On or about November 29, 2019, Complainant submitted an amendment request to include the following, that the Agency subjected him to a hostile work environment and discriminated against him on the bases of race (Asian), national origin (Chinese), color (yellow), age (71), and in reprisal for protected EEO activity when:

---

[2] For ease of reference, the Commission re-numbered the claims.

3   2021004763

7.      on November 4, 2019, Supervisor put Complainant on administrative leave stating that that he previously demonstrated disruptive and/or unsafe behavior, and prohibited Complainant future entry into government space, as though Complainant may be a potential danger to colleagues and to the interest of the government.

The Agency accepted claims 1, 2, 3, 6, and 7 for investigation. The Agency dismissed claim 4 pursuant to 29 C.F.R. § 1614.107(a)(1) because the allegation stated the same claim in Agency Case Number HHS-FDAORANE-029-18. Stephen R. v. Dep't of Health and Human Serv., EEOC Appeal No, 2020002509 (June 2, 2021). Regarding claim 5, the Agency noted that Complainant attempted to amend his prior complaint, in Agency Case Number HHS-FDAORANE-029-18, to also include the same matter that is in current claim 5, but that the Agency declined and dismissed the request when it was determined that Complainant had previously raised the claim in a negotiated grievance procedure. Id. The Agency, again, similarly dismissed the claim pursuant to 29 C.F.R. § 1614.107(a)(4).

The investigation revealed the following events.

Regarding claims 1 and 2, on February 14, 2019, Supervisor provided him an overall Performance Plan rating of 1.83 out of 5. Agency Exhibit 1 (E1) at 44-57. Accordingly, from February 15, 2019, through June 15, 2019, Complainant was placed on a Performance Improvement Plan (PIP). E1 at 199. The PIP notification letter stated that in order to pass, Complainant needed to both: 1) "Independently complete an EAM 4.7 proficiency test sample and submit a properly formatted and fully completed analytical package..." and 2) "perform analysis on regulatory samples, which is the major job duty as outlined in your position description." E1 at 203. During the PIP period, Supervisor met with Complainant weekly to discuss his performance, and provided him one-on-one training to help him improve his performance with the goal of passing the PIP. Id. at 58-108.

On April 25, 2019, Complainant completed his fourth Proficiency Test (PT). Report of Investigation (ROI) at 96; see also E1 at 185. The last PT occurred on April 25, 2019. Id. Supervisor approved, which satisfied part 1 of Complainant's PIP. ROI at 240-62.

Regarding part 2 of the PIP, Supervisor assigned Complainant three regulatory samples to complete during the PIP: two regulatory samples, #1110426 and #1110428 were assigned on May 20, 2019, and a third sample, #1111279, was assigned on May 29, 2019. E1 at 73, 89. Chemists record the time they spend working on a regulatory sample in a software program called Facts. According to Agency policy for the metals program, the total number of hours all chemists may collectively report for any one sample analysis may not exceed 13 hours, and Complainant was trained on this rule. ROI at 342-44.

On May 24, 2019, Complainant turned in his analytical package for samples #1110426 and #1110428. ROI at 236. On June 5, 2019, Complainant turned in his package for sample #1111279. E1 at 59. On June 19, 2019, Supervisor informed Complainant that he failed his PIP.

4                                                        2021004763

Supervisor determined that all three samples had to be redone and later assigned the work to other chemists. Supervisor credited Complainant with one hour each sample, and his colleagues with two to five hours each. E1 at 192-94.

As to claim 3, Supervisor noted that there was no request by Complainant to attend a September 2019 Scientific Conference in Detroit, Michigan. Agency Exhibit 2 (E2) at 11. However, Supervisor noted that on June 6, 2019, she did receive a request from Complainant to attend a scientific conference in Denver, Colorado, from September 8-12, 2019. E1 at 205. Supervisor declined the request because Complainant was still under a PIP. E2 at 11. Supervisor also acknowledged that she approved another employee to attend the June 2019 conference, but that employee was fully proficient and had no performance issues. E2 at 12.

As to claim 7, Supervisor stated that employees are given 30-days-notice when terminated, but due to Complainant's past behavior, she requested paid administrative leave while the termination was pending. ROI at 179. Supervisor expressed concern over Complainant's past volatile behavior, including yelling and pounding his fists on the desk. ROI at 179. On November 4, 2019, Supervisor issued a letter informing Complainant that she proposed to remove Complainant from federal service for unacceptable performance. The letter stated that he would be placed on paid administrative leave until a decision regarding removal was reached. The letter also informed Complainant that based on his previously demonstrated disruptive and unsafe behavior, he had to relinquish his security credentials, and was prohibited from entering the facilities without permission. ROI at 131.

At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of his right to request a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ). Complainant timely requested a hearing.

On December 12, 2020, the Agency filed a Motion for Summary Judgment (Motion). In its Motion, the Agency requested that claim 6 be dismissed for untimely EEO Counselor contact pursuant to 29 C.F.R. § 1614.107(a)(2). Complainant timely responded to the Motion.

On July 26, 2021, the AJ issued his decision. Regarding the Agency's dismissal request of claim 6, the AJ agreed that the claim was raised in an untimely manner. The AJ noted that while Complainant alleged the claim extended to June 2019, the ROI clearly indicated that the latest occurred on April 25, 2019. The AJ determined that, as to claim 6, Complainant did not contact the EEO Counselor until 76 days after the event, beyond the 45-day time limit. The AJ also determined that Complainant failed to make any persuasive arguments to extend the timeframe. Accordingly, he granted the Agency's request to dismiss claim 6, but considered it as background to Complainant's hostile work environment claim.

Regarding the merits, the AJ determined that the investigative record was adequately developed and adopted the Agency's Undisputed Material Facts as listed in its Motion.

After making all reasonable inferences in favor of Complainant, he determined that there were no material facts in dispute. The AJ detailed each claim and determined that the Agency had set forth non-discriminatory reasons for each action.

For claim 1, the AJ stated that Complainant was placed on a PIP and as part of the PIP, had to complete three samples. The AJ determined that while Complainant completed the three samples, the work was not properly completed per Agency regulations. Based on his failure to properly complete the samples, Supervisor determined that Complainant failed to successfully complete his PIP and had to reassign the samples to other chemists for completion (claim 2). Based on the improper completion, Supervisor could only partially credit Complainant for the work (claim 1) and credited his colleagues with hours spent redoing the samples.

Regarding claim 3, the AJ noted that while Complainant alleged that he was denied attendance for a conference in Detroit, Michigan, there was no documentation demonstrating that such a conference or his request existed. For this alone, the AJ determined that the Agency was entitled to summary judgment. However, the AJ noted that there was a June 6, 2019, request to attend a September 2019 conference in Denver, Colorado, that was denied by Supervisor due to Complainant's status on a PIP.

Concerning claim 7, the AJ determined that Supervisor provided legitimate, nondiscriminatory reasons for her decision to recommend Complainant's removal and placement on administrative leave pending such removal. The AJ considered Complainant's arguments but found that Complainant failed to demonstrate that the Agency's legitimate, nondiscriminatory reasons for claims 1, 2, 3, and 7 were pretext for discrimination.

Lastly, the AJ acknowledged that Complainant might have felt that the environment was subjectively abusive, but that the claims complained of fell short of any actionable claim of harassment. As such, the AJ issued a decision without a hearing in the Agency's favor.

On August 5, 2021, the Agency issued a final order adopting the AJ's finding that Complainant failed to prove that the Agency subjected him to discrimination as alleged. The instant appeal followed.

Complainant contests the dismissal of claim 6 for untimely EEO counselor contact, arguing that the last PT occurred in June 2019. However, Complainant did not provide any documents to support this contention. Complainant additionally argues that the AJ erred in granting summary judgment. In support of this, Complainant reiterates arguments previously made before the AJ. Lastly, Complainant did not specifically contest the Agency's procedural dismissals of claims 4 and 5. However, he did provide a May 24, 2018, course announcement associated with claim 4.

The Agency requests that the Commission affirm its decision implementing the AJ's determination of no discrimination.

6                                                    2021004763

## ANALYSIS AND FINDINGS

As an initial matter, we note that the Commission has the discretion to review only those issues specifically raised in an appeal. Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9, § IV.A.3. (Aug. 5, 2015). While Complainant provided a copy of the course announcement associated with claim 4, he did not specifically challenge the Agency's decision to procedurally dismiss claim 4 or 5. Accordingly, we will not address these claims on appeal.

*Untimely EEO Counselor Contact*

EEOC Regulation 29 C.F.R. §1614.107(a)(2) states that the Agency shall dismiss a complaint or a portion of a complaint that fails to comply with the applicable time limits contained in §1614.105, §1614.106 and §1614.204(c), unless the Agency extends the time limits in accordance with §1614.604(c).

EEOC Regulation 29 C.F.R. §1614.105(a)(1) provides that an aggrieved person must initiate contact with an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action. EEOC Regulation 29 C.F.R. §1614.105(a)(2) allows the Agency or the Commission to extend the time limit if Complainant can establish that Complainant was not aware of the time limit, that Complainant did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence complainant was prevented by circumstances beyond her control from contacting the EEO Counselor within the time limit, or for other reasons considered sufficient by the Agency or Commission.

On appeal, Complainant challenges the dismissal of claim 6 for untimely EEO Counselor contact. Complainant argues that the incident last occurred on June 19, 2019, making it timely. Complainant's appellate argument is in direct contradiction to his statement provided during the investigation, which specifically noted that the last PT occurred in April 2019. ROI at 96; see also E1 at 185. We note that Complainant does not provide any evidence to support his appellate contention that the PT occurred through to June 2019. Accordingly, we find that the AJ's decision granting the Agency's request to dismiss claim 6 was appropriate.

*Summary Judgment*

The Commission's regulations allow an AJ to grant summary judgment when he or she finds that there is no genuine issue of material fact. 29 C.F.R. § 1614.109(g). An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of the case.



7                                                              2021004763

In rendering this appellate decision, we must scrutinize the AJ's legal and factual conclusions, and the Agency's final order adopting them, *de novo*. See 29 C.F.R. § 1614.405(a) (stating that a "decision on an appeal from an Agency's final action shall be based on a *de novo* review…"); see also EEO MD-110, at Chap. 9, § VI.B. (providing that an administrative judge's determination to issue a decision without a hearing, and the decision itself, will both be reviewed *de novo*).

In order to successfully oppose a decision by summary judgment, a complainant must identify, with specificity, facts in dispute either within the record or by producing further supporting evidence and must further establish that such facts are material under applicable law. Such a dispute would indicate that a hearing is necessary to produce evidence to support a finding that the Agency was motivated by discriminatory animus. We note that Complainant's appellate arguments were a recitation of statements previously made before the AJ. Based on the record, even construing any inferences raised by the undisputed facts in favor of Complainant, a reasonable fact finder could not find in Complainant's favor.

Upon careful review of the AJ's decision and the evidence of record, as well as arguments made on appeal, we conclude that the AJ correctly determined that the preponderance of the evidence did not establish that Complainant was discriminated or subjected to a hostile work environment by the Agency as alleged.

## CONCLUSION

Therefore, we AFFIRM the Agency's final action implementing the AJ's decision.

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0920)

The Commission may, in its discretion, reconsider this appellate decision if Complainant or the Agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision.  If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**.  A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

8                                                    2021004763

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx. Alternatively, Complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507.  In the absence of a legible postmark, a complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period.  See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP).  See 29 C.F.R. § 1614.403(g).  Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless Complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request.  **Any supporting documentation must be submitted together with the request for reconsideration.**  The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances.  See 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision.  If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title.  Failure to do so may result in the dismissal of your case in court.  "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests.

9                                                      2021004763

Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

June 1, 2023
Date